Hon. Thomas S. Zilly

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GLENN THOMPSON, JR., and GLENN THOMPSON, SR., <br><br> Plaintiffs, <br><br> vs. <br><br> ON-SITE MANAGER, INC., <br><br> Defendant. | No. 2:15-cv-01596-TSZ <br><br> PLAINTIFFS' RESPONSE TO ON-SITE MANAGER'S MOTION TO COMPEL DISCOVERY <br><br> Noting date: June 17, 2016 |

**I. Relief Requested**

Plaintiffs seek denial of Defendant On-Site Manager's motion to compel discovery.

**II. Case Overview**

This action arises under the federal Fair Credit Reporting Act and Washington's Fair Credit Reporting and Consumer Protection Acts.[1] The plaintiffs, Glen Patrick Thompson Sr. and his son, Glen Patrick Thompson Jr. ("the Thompsons"), allege that they were denied admission at multiple rental properties in 2015 because the defendant, a tenant-screening company called On-Site Manger, Inc., erroneously reported that a judgment was entered against them in a 2011

---

[1] See 15 U.S.C. § 1681 et seq. (FCRA); RCW 19.86 (Cons. Prot. Act); RCW 19.182 (Wash. FCRA).

PLAINTIFFS' RESPONSE TO OSM'S MOTION TO COMPEL - 1

Northwest Justice Project
401 Second Ave S. Suite 407
Seattle, WA 98104
Tel. (206) 464-1519  Fax (206) 624-7501

King County eviction lawsuit.[2] In fact, the person against whom that eviction judgment was entered was a "Patricia Ann Thompson;" the plaintiffs deny knowing Patricia Ann Thompson or having ever lived at the address to which that eviction judgment related.[3] The erroneous reports appear to have resulted from similarities between the actual defendant's first name (Patricia) and the plaintiffs' middle names (Patrick).[4]

After being denied admission to one property (The Lodge at Peasley Canyon) because of this error, the plaintiffs disputed the report and On-Site corrected the error.[5] But when they applied to another property (Club Palisades) several weeks later, On-Site still included the Patricia Thompson eviction judgment on their tenant-screening reports, and they were turned down again.[6] The Thompsons disputed the report a second time, but On-Site failed to respond, and this action followed.[7] The gravamen of their claim is that On-Site did not follow reasonable procedures to keep the Patricia Ann Thompson eviction suit from being included in their screening reports, either in making the initial report or in preventing the eviction record from being "reinserted" after deleting it (in response to the Thompsons' dispute).[8]

---

[2] See Dkt. No. 1, Complaint, ¶ 1.3.
[3] See *Id.*, ¶¶ 1.3, 1.5.
[4] See *Id.*, ¶ 1.5.
[5] See *Id.*, ¶ 1.6.
[6] See *Id.*, ¶¶ 1.8, 1.10.
[7] See *Id.*, ¶¶ 1.11, 1.13
[8] See 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."); see also RCW 19.182.060 (same); see 15 U.S.C. § 1681a(5)(C) ("A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to [a consumer's dispute]").

### III. Facts Relevant to Motion

On-Site then presented 127 written discovery requests, including the Interrogatories and Requests for Production of Documents at issue here, in March 2016.[9] The plaintiffs responded in a timely manner, providing thorough answers to most questions and producing all relevant documents.[10] But the Thompsons did object and not otherwise respond to a number of questions that sought extensive documentation of basically all the Thompsons' financial affairs dating back five years—including every bank transaction, debt, credit card use, debt, and so on—which the Thompsons' counsel found overly burdensome and substantially irrelevant.[11]

On-Site reported dissatisfaction with the plaintiffs' responses—especially the financial information that was not produced and the manner in which the documents were organized and labeled.[12] In telephonic discovery conferences held May 25-26, the Thompsons' counsel agreed to double-check several items, provide supplemental material if possible, and try to more clearly organize and label the documents.[13] Later on May 27, On-Site filed this motion to compel.[14]

The Thompsons did supplement their responses on June 13, 2016.[15] But the Thompsons stand by their objections, substantially all of which called for the plaintiffs to obtain and produce extensive documentation pertaining to issues of little or no relevance to the present case.

### III. Question Presented

Should the Court grant On-Site's motion to compel discovery? Plaintiff answers no.

---

[9] See Dec. of Eric Dunn Re Thompson Discovery, ¶ 3; see also Dkt. No. 20-1, Int. & Req. for Prod. To Glenn Thompson Jr; see also Dkt. No. 20-2, Int. & Req. for Prod. To Glenn Thompson Sr.

[10] See Dkt. No. 20-1, Thompson Jr's Responses; see Dkt. No. 20-2, Thompson Sr.'s Responses.

[11] See Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 3.

[12] See Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 6, 8.

[13] See Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 9.

[14] See Dkt. No. 19, On-Site Manager's Mot. to Compel Discovery.

[15] See Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 11-12.

## IV. Evidence Relied On

Plaintiffs rely on the Declaration of Eric Dunn Regarding On-Site Manager's Motion to Compel Discovery and the exhibits thereto, and on all other materials in the Court file.

## V. Argument & Authority

The Court should deny On-Site's motion to compel discovery because the plaintiffs have already produced thorough and complete responses to all questions seeking information of meaningful relevance to this action, and because the burdens of obtaining and producing the additional discovery that On-Site seeks would be disproportionate to the needs of the case.

### A. Discovery requests regarding the plaintiffs' financial accounts.

Most of the discovery requests at issue sought broad categories of information regarding the Thompsons' consumer accounts and financial affairs; these included:

- Interrogatory No. 1 (to both Glen Thompson Jr. and Sr.), which asked them to "identify all banks [they] have done business with in the last five (5) years, including the name, address, and time [they] conducted business with the bank;"

- Interrogatory No. 2 (to each plaintiff), which sought similarly detailed information about the plaintiffs' credit cards and credit card account activity;

- Interrogatory No. 3 (to each plaintiff), which sought the plaintiffs' "credit scores since January 1, 2015, including the credit agency [that reported] the score(s);"

- Interrogatory No. 4 (to each plaintiff), which seeks detailed information about "all debts" the plaintiffs "incurred and/or made payments on over the last five years;" and

- Interrogatory No. 16 (to each plaintiff), which seeks extensive information regarding any communications the plaintiffs received from debt collectors in the preceding five years.[16]

---

[16] See Dkt. No. 20-1, Thompson Jr's Responses at 6-8, 14; see Dkt. No. 20-2, Thompson Sr's Responses at 6-8, 19.

On-Site also served requests for production (Nos. 1-4 and 16 to each plaintiff) seeking any documents related to these matters.[17] The plaintiffs objected to these interrogatories and requests for production as being irrelevant and unduly burdensome.

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed.R.Civ.P. 26(b)(1). A matter is "relevant" for discovery purposes if the information sought to be obtained is reasonably calculated to lead to the discovery of admissible evidence. See *Morris v. Nangalama,* Slip Copy 2015 WL 3447427 (E.D.Cal. 2015). But even if information sought is relevant, discovery into a particular issue may be limited based on proportionality considerations, such as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).

Information about the Thompsons' bank accounts, debts, and credit scores has nothing to do with any of the claims they have asserted.[18] But On-Site evidently intends to argue that its improper inclusion of the Patricia Ann Thompson eviction judgment on the plaintiffs' tenant-screening reports did not cause their rental applications to be denied because they also had poor credit.[19] Information pertaining to the Thompsons' financial affairs could have bearing on such a contention, but On-Site is already in possession of the Thompsons' tenant-screening reports.[20]

---

[17] See Dkt. No. 20-1, Thompson Jr's Responses at 15-16, 22; see Dkt. No. 20-2, Thompson Sr.'s Responses at 19-21, 27.

[18] See Dkt. No. 1, Complaint at 4-8.

[19] See Dkt. No., 20, Dec. of E. Morrison at ¶ 4.

[20] On-Site, for reasons not immediately clear to the plaintiffs, have filed versions of the plaintiffs' tenant-screening reports with the Court at Dkt. Nos. 20-3 and 20-4. Plaintiffs note these versions omit the "Patricia Ann Thompson"

Not only do the tenant-screening reports already contain comprehensive and detailed credit records on both plaintiffs, but residential landlords make rental admission decisions based on credit reports and tenant background checks—not the underlying account records, bank statements, and other materials that On-Site's discovery request calls for.[21] Thus, the underlying account information would be cumulative, and probably not be probative on the Thompsons' rental prospects anyway. See Fed.R.Civ.P. 26(b)(2)(C)(i) (proper to limit discovery on basis that information sought would be "unreasonably cumulative or duplicative").

Furthermore, the Thompsons—both of whom are low-income individuals who were homeless when this action was filed—do not even have the records necessary to fulfill these requests—and thus would need to obtain them from the various financial institutions involved, probably at significant cost, and forward them to On-Site. As these documents are not within the Thompsons' "possession, custody, or control," they have no duty to (acquire and) produce them. See Fed.R.Civ.P. 34(a). Even if the records were within the Thompsons' control, obtaining and producing such records—especially from such a broad swath of creditors, financial institutions, and other entities—would not be proportional to the needs of the case.

**B. Specific requests for financial information.**

In addition to the broad, general requests described above, On-Site also asked the Thompsons for information and documents pertaining to several specific accounts. Though the plaintiffs remain skeptical as to the possible relevance of the information sought, responding to

---

eviction records that gave rise to this action. Other versions of the reports bearing those eviction records do exist and have been produced in discovery, but are do not appear relevant to any issue in this motion.

[21] See Washington Laws of 2012, Ch. 41 ("The legislature finds that residential landlords frequently use tenant screening reports in evaluating and selecting tenants for their rental properties…").

the more specific requests was much less burdensome and so the plaintiffs answered those requests to the best of their ability and provided what documentation they had.[22]

### 1. Glen Thompson Jr.'s Ray Klein debt.

On-Site presented a specific request for production (No. 20 to Glen Thompson Jr.) seeking information regarding his debt to Ray Klein, Inc.[23] The plaintiffs did not object to that request, and provided the only documents they had pertaining to the Ray Klein account.[24] After the May 25-26 discovery conference, plaintiffs' counsel double-checked with the plaintiffs to ensure that all responsive documents were produced to On-Site.[25]

Since the Thompsons do not actually have any other documents related to the Ray Klein account other than what they have already produced, fulfilling On-Site's request would require the plaintiffs to first obtain documents from Ray Klein and then produce them to On-Site. The logical procedure for accomplishing this is a document subpoena. See Fed.R.Civ.P. 45(a). Of course, On-Site could subpoena the documents just the same as the plaintiffs. Nonetheless, the plaintiffs have prepared a document subpoena to Ray Klein; they plaintiffs will attempt to serve the subpoena contemporaneously with this brief and intend to produce (to On-Site) any documents received in response.[26] Therefore, the Court should find that the plaintiffs have adequately responded to this request.

### 2. Glen Thompson Sr.'s specific debts

In Request for Production No. 20 to Glen Thompson Sr., On-Site requested all documents related to debts owed to "T-Mobile, CenturyLink Qwest Corporation, Kent, Seattle, Coast

---

[22] Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 4.
[23] See Dkt. No. 20-1, Thompson Jr's Responses at 23.
[24] See Dkt. No. 20-1, Int. Thompson Jr's Responses at 23.
[25] Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 11.
[26] Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 12.

National Insurance Company, and AT&T."[27] While objecting to the request (again on relevance/lack of proportionality grounds), Mr. Thompson Sr. had documentation showing that he had paid off the AT&T account, and produced it.[28] Mr. Thompson Sr. did not have documents regarding any of the other accounts.

Though narrower in scope, this request for production is objectionable for the same essential reasons as the more general requests seeking information on all debts, credit cards, and banking transactions as discussed above: the essential information a potential housing provider would consider regarding each account appears in Mr. Thompson Sr.'s tenant screening report, so underlying records from each of these accounts are not relevant and requiring Mr. Thompson Sr. to obtain and produce such records imposes an unnecessary burden. Again, if On-Site truly wants this information, then On-Site can send a document subpoena. The plaintiffs have sent a subpoena to Ray Klein to seek information of slightly possible relevance; they should not have to send document subpoenas to six more companies seeking information of no practical relevance.

### 3. Mr. Thompson Sr.'s child support account

On-Site's screening report on Mr. Thompson Sr. showed he previously had a family support account with the Dept. of Health & Social Services (DSHS)—but also that the account had a $0 balance at all relevant times, and was last active in August 2014.[29] In Request for Production No. 21 to Mr. Thompson Sr., On-Site, sought all documents related to this family support account.[30] This represents the classic "fishing expedition," as there is no conceivable basis on which Mr. Thompson Sr.s' defunct family support account could negatively affect his

---

[27] Dkt. No. 20-2, Thompson Sr.'s Responses at 29.

[28] See Dkt. No. 20-2, Thompson Sr.'s Responses at 29.

[29] See Dkt. No. 20-3, Rental Report for Glenn Thompson Sr. at 5.

[30] See Dkt. No. 20-2, Thompson Sr.'s Responses at 29.

ability to obtain housing (or otherwise relate to any claim or defense). Given the lack of plausible relevance, the plaintiffs objected (but do not hold responsive materials regardless).

Even if the family support information was relevant, it is clearly outside the plaintiffs' possession, custody, or control. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord,* 162 F.R.D. 603, 619 (N.D.Cal. 1995). Mr. Thompson Sr. is obviously not in control of DSHS; he also does not have the legal right to obtain the documents from the account, which are made confidential by law not only for his benefit but also the persons "for whom the division of child support (DCS) provides support enforcement services." WAC 388-14A-2105. In other words, Mr. Thompson Sr.'s consent alone is not adequate—a person would either need authorization from the child or custodial parent as well, or an administrative order to access the records.[31]

In their supplemental discovery responses, the plaintiffs made clear Mr. Thompson Sr. would not object to DHSH producing these materials and would execute a release-of-information form to allow such production if necessary.[32] But the plaintiffs should not have to incur the (evidently significant) expense or burden of obtaining such demonstrably irrelevant material themselves. See Fed.R.Civ.P. 26(b)(1).

### 4. Mr. Thompson Sr.'s liens, judgments, or garnishments.

Interrogatory No. 5 to Glen Thompson, Sr., seeks information on all liens, judgments, and garnishments against him for the preceding ten years, and On-Site's Request for Production

---

[31] See WAC 388-14A-2105(3)(c) ("authorizing disclosure to "[a] party to a judicial proceeding … if the superior court judge or administrative law judge (ALJ) enters an order to disclose.").

[32] See Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 11.

1  No. 5 seeks all documentation related to the same.[33]  The plaintiffs objected to these requests as
2  being irrelevant, unduly burdensome, and more easily obtainable through the courts—but also
3  answered that Mr. Thompson Sr. did not recall being served with notice of any judgment or
4  garnishment.[34]  Notably, the materials the plaintiffs have produced make clear Mr. Thompson
5  Sr.'s income is Social Security benefits, which are not generally subject to garnishment.[35]

6        The On-Site screening report for Mr. Thompson Sr. lists a $244 judgment in King County
7  Superior Court, case no. 132250225, in favor of the State of Washington, and a date of 7/2013.[36]
8  As Mr. Thompson Sr. had no additional knowledge or documentation regarding that judgment,
9  he was not able to provide any further response to On-Site's discovery request.[37]  Again, the
10 information regarding that judgment which appears in Mr. Thompson's tenant-screening reports
11 could conceivably affect his rental housing prospects, but not the underlying records on which
12 the judgment is based.  Thus, the relevance of the information On-Site seeks is minimal at best.

13       Furthermore, nothing prevents On-Site from accessing and reviewing any records the
14 King County Superior Court has on file about cases or judgments against Mr. Thompson Sr.  The
15 court records systems would likely be a more expedient and thorough source for obtaining the
16 discovery anyway.  See Fed.R.Civ.P. 26(b)(2)(C)(i) (proper to limit discovery on basis that
17 information sought proper to limit discovery on basis that information sought "can be obtained
18 from some other source that is more convenient, less burdensome, or less expensive").

19 **C. Miscellaneous Issues**

20       **1. Documents related to damages and to other housing applications**

---

[33] See Dkt. No. 20-2, Thompson Sr.'s Responses at 7-8, 21.
[34] See *Id.* at 8.
[35] See *Id.* at 27-28.
[36] See Dkt. No. 20-3, Rental Report for Glenn Thompson Sr. at 2.
[37] See Dkt. No. 20-2 Thompson Sr.'s Responses at 8, 21.

On-Site also takes issue with the plaintiffs' responses to Requests for Production No. 14 (to each plaintiff), which sought "all documents related to all efforts by [the Thompsons] to mitigate [their] damages, including but not limited to: all rental applications ... and all documents related to all housing [they] attempted to obtain" since January 1, 2015.[38] On a similar note, On-Site argues the plaintiffs' responses to Requests for Production No. 28 (to Mr. Thompson Jr.) and 30 (to Mr. Thompson Sr.), which sought all documents in support of their claims for actual damages, were inadequate.[39]

The plaintiffs, who sustained actual damages from On-Site's erroneous screening reports by being denied admission to rental housing, produced all the documents they had responsive to these requests—which mainly consisted of denial notices from rental housing providers.[40] Furthermore, in response to Interrogatory No. 6 to Glen Thompson Sr., the plaintiffs provided an extensive summary of the housing where the plaintiffs have lived and new properties to which they have applied within the past five years.[41] That summary included names and addresses of rental properties, dates of residence, and other details.[42] Nothing prevents the defendants from following up with properties identified therein to seek additional records and documentation. The Court should find that the plaintiffs adequately responded to these requests.

### 2. Organization & labeling of documents produced

The documents the plaintiffs produced to On-Site were organized into eight batches, and the response to each request for production specified which batches contained the documents responsive to each request. Because many of the requests were duplicative and because many of

---

[38] See Dkt. No. 20-1, Thompson Jr's Responses at 21, see Dkt. No. 20-2, Thompson Sr.'s Responses at 26.
[39] See Dkt. No. 20-1, Thompson Jr's Responses at 26; see Dkt. No. 20-2, Thompson Sr.'s Responses at 34.
[40] See Dkt. No. 20-1, Thompson Jr's Responses at 21, 26; see Dkt. No. 20-2, Thompson Sr.'s Responses at 26, 34.
[41] See Dkt. No. 20-2, Thompson Sr.'s Responses at 8-10.
[42] Id.

the documents were responsive to more than one request, this method of organization prevented unnecessary duplication while remaining clear and functional. Plaintiffs believe this method of organization was sufficient under Rule 34. See Fed.R.Criv.P. 34(b)(2)(E)(i) (party producing documents "must organize and label them to correspond to the categories in the request.").

Nevertheless, when On-Site's counsel reported difficulty in understanding how the documents were organized and labeled, plaintiffs' counsel agreed to review the production and attempt to label them more clearly. To that end, the plaintiffs prepared supplemental charts which further identify each specific document and state which specific document requests each identified record is responsive to.[43] Therefore, the Court should find that the plaintiffs adequately organized and labeled their documents.

## VI. Conclusion

For all of the foregoing reasons, the Court should deny On-Site Manager's motion to compel. To the extent the Court finds On-Site's position was not substantially justified, the Court should award the reasonable costs of opposing the motion under Fed.R.Civ.P. 37(a)(5).

Respectfully Submitted this 11 day of June, 2016

NORTHWEST JUSTICE PROJECT

By _____
Eric Dunn, WSBA #36622
Leticia Camacho, WSBA #31341
Attorneys for Plaintiffs

---

[43] See Dec. of Eric Dunn Re OSM's Mot. to Compel Discovery, ¶ 11.